UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X

GLORIA POLLACK,                       Case No.

                 Plaintiff,         **COMPLAINT**

        v.

CITY UNIVERSITY OF NEW YORK,      (Demand for Trial by Jury)
and KINGSBOROUGH COMMUNITY
COLLEGE,

                 Defendants.

-------------------------------------------------------- X

      Plaintiff Gloria Pollack, by her attorney, Arnold Pedowitz, alleges as follows for her

Complaint against Defendants:

### NATURE OF ACTION

      1.    This action is brought to remedy claims of disability discrimination and retaliation

under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 to 12213, as amended, for

employment discrimination on the basis of disability and for disability discrimination and retaliation

under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 to 796, as amended.  In addition to her federal

claims listed above, Plaintiff also asserts claims under the New York State Human Rights Law, N.Y.

Exec. Law §§ 290 to 297, as amended, for employment discrimination and retaliation on the basis of

religion, and disability; and under the New York City Human Rights Law, N.Y. City Admin. Code §§

8-101 to 131, as amended, for employment discrimination and retaliation on the basis of actual or

perceived creed and disability.  Supplemental jurisdiction is also invoked with respect to the claims

under New York State and New York City laws.

1

2.     Plaintiff seeks injunctive and declaratory relief, compensatory damages, back pay, front pay, benefits, attorneys' fees, prejudgment interest, costs and other appropriate relief pursuant to federal, state and local laws.

<u>**JURISDICTION AND VENUE**</u>

3.     Plaintiff filed a timely Complaint against Defendant The City University Of New York (variously referenced herein by name or by its abbreviation "CUNY") alleging disability discrimination and retaliation on or about March 20, 2024, and received a dismissal for administrative convenience of that filing dated July 25, 2024.

4.     Plaintiff duly and timely filed a Notice of Claim against Defendants on or around May 16, 2024, and more than 90 days have passed since then without its being resolved.

5.     Plaintiff filed a timely Charge of Discrimination against Defendants City University of New York and Kingsborough Community College with the Equal Employment Opportunity Commission ("EEOC") on or around May 28, 2024, alleging disability discrimination and retaliation all as further alleged herein.

6.     By notice dated July 25, 2024, the EEOC advised Plaintiff of her right to sue Defendant in federal court. This action commenced within 90 days of Plaintiffs receipt of the said notice. Plaintiff has fully complied with all prerequisites to jurisdiction in this Court under applicable law.

7.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C.A. §§1331 and 1337 and 42 U.S.C.A. §2000e-5(f).

8.     This court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C.A. §1367(a).

9.     The Defendants regularly do business within, the actions complained of herein occurred within, and Plaintiff resides in, the Eastern District of New York. Venue is proper in this

District pursuant to 28 U.S.C.A. §139l(b).

## PARTIES

10.    Gloria Pollack ("Plaintiff") is, and at all times material hereto was, a Jewish female over 40 years of age, a qualified individual with a disability who can perform the essential functions of her job, and an employee of CUNY in the capacity of a Professor working at Defendant Kingsborough Community College (variously referenced herein by name or by its abbreviation "KCC") and based in Kings County, New York.

11.    On information and belief, Defendant The City University of New York is the nation's largest urban public university and has a number of colleges spread across New York City's five boroughs, including but not limited to Defendant Kingsborough Community College. CUNY is a separate and distinct body corporate designated as the board of higher education in the City of New York and maintains its principal place of business in Manhattan, New York. At all times material hereto, CUNY was Plaintiff's employer within the meaning of the laws being sued upon.

12.    On information and belief, Defendant Kingsborough Community College is a part of the City University of New York having its principal Place of business in Brooklyn New York. At all times material hereto KCC was Plaintiff's employer within the meaning of the laws being sued upon.

## FACTUAL ALLEGATIONS

13.    Plaintiff began teaching at KCC in 1994, obtained tenure thereafter and was promoted to full professor in 2007. She holds a Ph.D. in Hebrew Literature from Columbia University (1981) as well as an M.Phil. in Hebrew Literature from Columbia University (1978) and an M.A. in Hebrew from New York University.

14.    As an employee of Defendants Plaintiff fulfilled administrative and committee

responsibilities at KCC, served for the past two decades as General Education Coordinator for the Middle States Review and as Faculty Assessment Liaison for the Department of World Languages and Cultures.

15.     During her employment Plaintiff served Defendants faithfully.  She developed assessment plans for Middle States Review and wrote assessment reports for the Department of World Languages and Cultures.  In addition, she developed the curriculum mapping of Foreign Languages with the outcomes of the Liberal Arts Program, revised syllabi, developed the curriculums for new courses, and taught a variety of classes and many students.

16.     Plaintiff's prestigious publications at KCC are and were a credit to her Department, KCC and CUNY.  Their titles are:

A.  *Eliezer Zweifel and the Intellectual Defense of Hasidism*. NJ: KTAV, 1995.  (13 reviews on this work)

B.  *The Jewish Festivals in Ancient, Medieval, and Modern Sources*.  NY: Sepher- Hermon Press, 1997

C.  Book Review for *The Heroic Struggle* by Rabbi Dr. A.B.Z. Metzger.  *The Algameiner Journal*. Feb. 18, 2000.

D.  Book Review for *Chasidic Perspectives* by Rabbi A.B.Z. Metzger, *The Algameiner Journal*, Oct. 18, 2003.

E.  *Reading, Writing, and Rudimentary Hebrew*. First Edition, New Haven: Harcourt College Publishers, 2001.

F.  *Reading, Writing, and Rudimentary Hebrew*, Second Edition. NY: Pathways Publishing, 2003.

G.  *Reading, Writing, and Rudimentary Hebrew.*  Third Printing, NY: Sepher-Hermon Press, 2005.

H.  "Self-Nullification: The Paradox of Surrender and Permanence."   *B'Or Ha'Torah Journal of Science, Art & Modern Life* 16 (2006), pp. 165-184.

I.  "Self-Effacement (*Hitbatlut*) in the Bible." *The Jewish Bible Quarterly*, vol. 35:3, July-September 2007, pp. 179-186.

J.  Letter to The Editor. *The Jewish Bible Quarterly*.  Vol. 36:2, April-June 2008, pp. 130-

133.

K.  The Philological Impact of Biblical Hebrew on the English Language." *IAFOR Journal of Arts & Humanities*.  Vol. 6: 2, Autumn 2019.

L.  *"*Review on the Philological Impact of Biblical Hebrew on the English Language." *Arts and Social Science Journal* 12 (2021): 487.

M.  "Hebraic Influences in The Life of Lazarillo de Tormes." *World Journal of Education and Humanities*. Vol. 6:1 (2024), pp. 101-110.

N.  *The Hebraic Origins of the English Language in the Book of Psalms.*  5 vols.  NY: KTAV Publishing House (pending publication).

17.     Plaintiff was assigned to teach, and successfully taught, classes remotely starting in 2020 and continuing thereafter in 2021, 2022, 2023 and 2024.  Other tenured teachers employed by CUNY and by KCC are allowed to, and do, teach remotely.

18.     Plaintiff's requests for a reasonable accommodation to work remotely as a professor teaching students at KCC were granted for the Fall 21, Spring 22, and Fall 22 semesters.  Neither KCC nor CUNY requested additional medical support from Plaintiff before granting the accommodations to her.

19.     By letters in August 2023, Plaintiff's request for a reasonable accommodation to work remotely for the Fall 2023 semester were denied by KCC. Nothing in the denial specified the reasoning underlying the conclusions by KCC and no interactive process was conducted by KCC with Plaintiff.

20.     Plaintiff's request for a reasonable accommodation to work remotely was also denied for the Spring 2024 and Fall 2024 semesters.  Despite CUNY and KCC knowing of her disabilities, Plaintiff was assigned to teach some in-person classes during that time.  As was the case with other faculty who did not need accommodations, Plaintiff was also assigned to teach some classes remotely.

21.     More than two months after filing her application for a reasonable accommodation in November 2023, Plaintiff was for the first time asked to explain a single statement by her

physician that is part of her application for a reasonable accommodation. A timely response was given to KCC by Plaintiff's physician and no further inquiry or comment regarding it was made by KCC to Plaintiff or her physician.

22. That application for a reasonable accommodation was denied more than three months after she applied for it by letter dated February 22, 2024. In that letter no medical evidence or claim of undue hardship was stated by KCC.

23. Plaintiff's accommodation request for the Fall 2024 semester was submitted on July 14, 2024, and was denied on September 3, 2024, two days before the beginning of the term. Her appeal of the denial was denied on September 27, 2024.

24. The KCC accommodation denial letter of February 22, 2024 said that Plaintiff could (i) alternate [her physical] positions while teaching as needed; (ii) could wear a mask which the Office of Public Safety could provide her with; (iii) be given a classroom closer to the building's entrance; and (iv) utilize the Access-a Ride drop off point closest to classroom to avoid having to walk too far when arriving at campus (contrary to her doctor's directive not to use public transportation).

25. While giving the appearance of being reasonable, the aforesaid suggestions by KCC and its letters denying a reasonable accommodation, say nothing about why they disagree with Plaintiff's doctor's findings or medical opinions or why they believe KCC's response to be proper.

26. The suggestions by KCC for how Plaintiff could teach in-person classes were in direct opposition to the medical findings and opinions of Plaintiff's physician. Plaintiff's physician variously wrote in his letters of November 10, 2023, February 1, 2024, and of July 25, 2024, that such suggestions were contraindicated, and that Plaintiff has a permanent and irreversible condition that has seriously limited her ability to work as other than a remote employee.

27.     Plaintiff's physician specifically wrote: (i) that a mask would not protect Plaintiff because "she suffers from shortness of breath which will be exacerbated" and that a "mask does not provide guaranteed protection from airborne bacteria or viruses"; (ii) that transiting to KCC would endanger her because "she is at significant infectious disease risk with the possibility of the same becoming lethal," and that "she should not be required to teach in a classroom environment"; (iii) that "it is the resultant pain and weakness if made to commute, as well as the potential danger to her from contracting a viral or bacterial infection or illness are such that require the accommodation of being allowed to work remotely".

28.     KCC's letters denying a reasonable accommodation to Plaintiff do not say anything about why KCC disagrees with Plaintiff's doctor or why KCC believes its responses to be appropriate in light of the only medical reports given to KCC.

29.     Neither KCC nor CUNY requested or held an Independent Medical Examination of Plaintiff before reaching their decisions of denial.

30.     On information and belief no KCC or CUNY representative spoke with Plaintiff's physician regarding his findings.

31.     Neither KCC nor CUNY conducted an interactive process with Plaintiff before denying her requests for a reasonable accommodation.

32.     No medical justification for delaying its decision for three months or denying Plaintiff's request was given by KCC or CUNY for when it denied her November 2023 request for a reasonable accommodation.

33.     Neither KCC nor CUNY asserted that granting Plaintiff's requests for a reasonable accommodation would cause either or both to sustain an undue hardship.

34.     Other classes in 2023 and 2024 which could have been taught remotely by Plaintiff were scheduled for in-person teaching and could not be taught by Plaintiff because

of her disability. Registration for those classes would have been higher if they were scheduled to be taught remotely. This resulted in lost income by Plaintiff.

35. KCC and CUNY have not said to Plaintiff that her courses cannot be satisfactorily taught by remote means or that by teaching them remotely either KCC or the students have been, or would be, hurt or deprived of something material. Likewise, neither KCC nor CUNY have said that Plaintiff cannot, and Plaintiff has and can, effectively participate by means of remote communication, like zoom, in Departmental or other meetings.

36. Appeals of the denials of Plaintiff's requests for a reasonable accommodation though known to be in vain, were made and denied without KCC or CUNY seeking or submitting any medical rebuttal to Plaintiff's applications or medical substantiation for its denials, and without having held an interactive process.

37. The denials of a reasonable accommodation to Plaintiff were discriminatory and in retaliation for her protected activities of applying for same, for having advocated to increase the teaching of Hebraic studies, because of her creed as more fully alleged herein.

38. Despite her medical condition having been known in detail to CUNY and KCC, Plaintiff was retaliatorily assigned to teach in-person classes, something that would present a life-threatening situation for her.

39. The assignment of Plaintiff to teach in-person classes was done to retaliate against her for pursuing a reasonable accommodation.

40. On information and belief, at some point in 2024 the Department of World Languages and Cultures that Plaintiff had been a member of for many years was improperly ended and thereafter Plaintiff was assigned to teach as part of the Department of Communications and Performing Arts at KCC.

41. The transfer of Plaintiff to the Department of Communications and Performing Arts

was done to keep Plaintiff from being Chair of her department and in retaliation for her having engaged in the protected activities of advocating for increased Hebraic courses and increased content, being a member of protected classes (creed and disability) and for being a qualified individual with a disability capable of performing the essential functions of her job, all as related herein.

42.     Plaintiff lost her seniority upon being transferred to the Department of Communications and Performing Arts.

43.     Plaintiff, in her capacity as Coordinator of the Hebrew Program, made continuous and ongoing efforts to stop the cancellation of Hebraic courses and to grow the Hebraic studies portion of the Department of World Languages and Cultures, but they were largely ignored and/or treated adversely by KCC management.  Said cancellation of courses and refusal to grow the number and type of Hebraic courses had an exponential effect in decimating the program – thereby negatively affecting future sequential enrollment as well as existential enrollment.

44.     CUNY and KCC have a history of complaints of antisemitism being made against them and such allegations continue to the present (see, for example, https://nypost.com/2023/04/06/how-cuny-became-americas-most-anti-semitic-university/; and https://www.jns.org/cuny-investigation-retaliatory-jewish-professors-say/.

45.     In or about 2014 Plaintiff's classroom at KCC was desecrated *inter alia* by persons unknown putting swastikas on its walls and urinating on a keyboard.

46.     Joanne Russell became a provost at KCC in or about 2016.  She opposed expanding the offerings pertaining to Hebraic studies by Plaintiff's Department.

47.     Following the October 7, 2023, offensive by Hamas in Israel, opposition to Plaintiff's involvement in advocating for increases being made in the Hebrew Language and Literature studies areas and more generally in the Department of World Languages and Cultures

or for not changing the status quo, increased incrementally.

48.     Oppositional actions to Plaintiff by then KCC Provost Joanne Russell and other CUNY personnel became more pronounced after October 7, 2023.

49.     Plaintiff's requests to expand or at least not reduce the number, scope and/or format of Hebraic class offerings were denied and as a result of that student registration for those limited classes which were posted and/or "unposted earlier than normal" materially diminished.  The diminished course offerings and early unposting of classes resulted in Plaintiff's teaching income being reduced.

50.     At a meeting of the Department of World Languages and Cultures on November 17, 2023, the Chair of the Department announced his upcoming retirement and Provost Rusell announced that the Chair of a different Department, Scott Cally, who is Chair of the Department of Communications and Performing Arts, would be appointed to also serve as the Interim-Chair of the Department of World Languages and Cultures.

51.     The foregoing plan was an exacerbation of the preexisting effort to materially and improperly interfere with Plaintiff's employment, the Hebraic studies portion of the Department of World Languages and Cultures and to do an end run around the employment protection that the laws, Bylaws and tenure provisions afford Plaintiff.

52.     Plaintiff endeavored to protect the integrity of the Department of World Languages and Cultures, as provided in the applicable Bylaws.  She advocated for a member of the Department of World Languages and Cultures to become the Interim-Chair, in place of Scott Cally, but her efforts were deliberately frustrated by Provost Russell and KCC as retaliatory actions against Plaintiff.

53.     Following Plaintiff's organizing of the Department's faculty a member of the Department of World Languages and Cultures was voted to serve as Interim Chair, but that

election was invalidated for lacking a majority. A second election, this one also supervised by the Legislative Committee of the KCC College Council, was held and the Plaintiff was elected by majority vote of those entitled to cast ballots to serve as Interim-Chair.

54. Although this second election was validated by the Chair of the University Faculty Senate and administered by the Legislative Committee of the College Council, it was declared to be invalid by KCC Provost Russell.

55. KCC and Provost Russell improperly refused to recognize that second election in which Plaintiff was elected by a majority of the tenured members of the Department of World Languages and Cultures on February 1, 2024, to be its Interim-Chair.

56. Provost Russell did not want Plaintiff to be elected but it is the President of KCC who is delegated the power to approve, or not approve, of the person elected as Interim-Chair (Bylaws Section 9.1.c).

57. The Bylaws do not give the Provost any power to determine whether a particular individual can serve as Interim-Chair of the Department of World Languages and Cultures.

58. After February 1, 2024, Provost Russell and the then acting President of KCC, Suri Duitch, MSW, Ph.D., told the members of the Department of World Languages and Cultures that they were ending that Department and moving its faculty to one or more other Departments.

59. The CUNY Bylaws do not allow such action to be independently implemented by the Provost and/or the then acting President of KCC.

60. Section 9.1.b of the CUNY Bylaws does not give the Provost the authority to appoint the Interim-Chair of a Department.

61. Bylaws Section 9.1.b sets out the procedures for how Department Chair and Interim-Chair elections are to be held. For people being elected to serve a full term as Chairperson there is one procedure. Still in Section 9.1.b, the Bylaws say that when a vacancy

arises during a term that "Vacancies shall be filled by election for the unexpired term." Nothing is said about consent of the President.

62.     Bylaws Section 9.1.c makes clear that nothing happens automatically in circumstances where the President does not want to approve the election of a department chairperson. Rather, the President is first to

> confer with the department and thereafter shall report to the board, through the chancellor any subsequent action by the department with respect thereto, together with his/her own recommendation for a chairperson. The recommendation by the president to the board, through the chancellor, for the designation of the department chairperson should take place only after careful consideration by the president of the qualifications of those selected by the respective departments. The president shall base his/her recommendation on the capacity of the individual selected to act effectively as the departmental administrator and spokesperson and as a participant in the formation, development, and interpretation of college-wide interest and policy.

63.     Wholly ignoring what the Bylaws provide, following a meeting with some of the Department of World Languages and Cultures' faculty on February 5, 2024, Provost Russell stated in her email of February 7, 2024 that she rejected the election of Plaintiff as Interim-Chair, that the Provost had appointed Scott Cally to be Interim-Chair of the Department of World Languages and Cultures and that the Department of World Languages and Cultures could not continue in its then configuration.

64.     The Provost went on to say that the Department of World Languages and Cultures would have to be "merged, or abolished" in accordance with "CUNY Bylaws Policy 1.15".

65.     The CUNY Manual of General Compliance, https://policy.cuny.edu/general-policy/article-i/#policy_1.15, makes clear that any discussion of the future of a Department must go through a procedure before any meaningful action in pursuit of a merger or abolishment can take place. Specifically, it says that:

> A recommendation emanating from a college for the . . . consolidation or merger of existing academic departments, or the abolition of an existing

12

department shall, after review by the Chancellery, be considered by the
Board of Trustees Committee on Academic Policy, Program, and Research.
If the recommendation is approved by the Committee, it shall be considered
as a policy calendar item by the Board of Trustees.

66.     On information and belief, that policy (https://policy.cuny.edu/general-policy/article-i/#policy_1.15) was not complied with and KCC actively moved forward with its improper closing of the Department of World Languages and Cultures and the moving of its activities and faculty into the Communications and Performing Arts Department under Scott Cally, its Chair.

67.     Faculty members of the Department of World Languages and Cultures were told of the move. Scott Cally, who is also the PSC Union representative, told Plaintiff that she might not be accepted into the Communications and Performing Arts Department.

68.     Following Plaintiff's objections to what was going on after the announcement of the plans to appoint Scott Cally and to end the Department of World Languages and Cultures, members and employees of the Department of World Languages and Cultures became increasingly negative and dismissive towards Plaintiff.

69.     Hostilities grew. Faculty and employees were told not to talk with, or listen to, Plaintiff. Her calls were not taken. At least one member of the faculty refused to support Plaintiff's positions saying that they would anger the Provost and result in retaliation against the Department. Plaintiff's repeated requests for her classes to be timely posted for registration purposes, to remain open for students to enroll in and for classes with low enrollments to be allowed to go forward, at least until the official cancellation deadline, were denied.

70.     In an email dated March 22, 2024, Scott Cally wrote to Plaintiff saying:

We'd be happy to welcome Hebrew into our department's newly forming
Languages division. The concern is not about the language itself, but rather with
you as an individual. Our department values collegiality very highly and there is
concern that you do not possess the interpersonal skillset necessary for you to

13

succeed in our department.

71. Most recently, and as part of the continuing hostility against the Plaintiff, when she suggested to Scott Cally that Plaintiff should be consulted in regard to her schedule, he responded by email of September 5, 2024, telling her to "email [her] scheduling suggestions to the provost" as the provost's office would be handling the scheduling for Hebrew classes going forward. Such matters are customarily addressed by the Department Chair.

72. On September 4, 2024, Scott Cally advised Plaintiff that she could not continue as Middle States Assessment Coordinator for Foreign Languages, a function she performed for two decades with reassigned time.

73. The Provost's and the Acting President's actions, and those of Scott Cally, are and have been *ultra vires*, improper and indicia of Plaintiff's being discriminated and retaliated against for being in, and engaging in, her protected class and protected actions.

74. At the meeting between the Acting President and the Provost and the members of the Department of World Languages and Cultures on March 12th the acting President and Provost said that they were appointing Scott Cally to be Interim-Chair of the World Languages and Cultures Department as he had the capability to be so.

75. In response to Plaintiff's question at the meeting on March 12th as to whether by appointing Scott Cally that they were indicating that Plaintiff lacked the ability to run the Department of World Languages and Cultures as Interim-Chair, their response was "definitely not". They went further and said words to the effect that it was just that they were closing that Department, and they felt it was appropriate to appoint Scott Cally.

76. Acting KCC President Duitch admitted at the meeting that she was not aware of any reason that would disqualify Plaintiff from serving as Interim-Chair and that Scott Cally was chosen for that position because the Department of World Languages and Cultures was being

14

merged into the Communications and Performing Arts Department.

77. The steps required to be taken by Defendants before Departments at KCC are eliminated and/or merged were not taken. It was, and is, improper for the Acting President and/or the Provost to make decisions that can only be made after first being authorized to do so by CUNY's Board of Trustees.

78. On information and belief CUNY's Board of Trustees did not issue a decision to terminate the Department of World Languages and Cultures and or to merge it into the Communications and Performing Arts Department before Scott Cally was appointed Interim Chair of the Department of World Languages and Cultures.

79. On information and belief CUNY's Board of Trustees did not make a decision authorizing the merging of the Department of World Languages and Cultures into the Communications and Performing Arts Department before Plaintiff was made a member of the Communications and Performing Arts Department.

80. On information and belief Provost Joanne Russell's employment with Defendants ended in 2024 giving rise to the suggestion that she was terminated, and that the termination was at least in part for the wrongdoing alleged herein.

81. The actions as aforesaid were done by KCC and CUNY on account of Plaintiff's creed, Jewish, and her advocacy in favor of Hebraic studies, and in retaliation for Plaintiff's actions, as aforesaid.

82. The actions as aforesaid by KCC and CUNY established a hostile work environment for Plaintiff.

83. KCC and CUNY retaliated against Plaintiff because she opposed its discriminatory employment practices.

84. Plaintiff suffered adverse employment actions by Defendants in violation of

law in that she was made to endure a materially adverse change in the terms and conditions of her employment.

85.    Plaintiff was treated less well than other employees because of her disability.

86.    Plaintiff was treated less well than other employees who were not Jewish and/or who did not advocate in favor of Hebraic studies and/or who did not advocate in opposition to KCC's and/or CUNY's actions curtailing Hebraic studies.

87.    The actions of Defendants, as aforesaid, resulted in Plaintiff being denied the ability to earn all the credits she would have.

88.    The actions of Defendants, as aforesaid, resulted in Plaintiff being denied service positions that she had held for years before her being transferred to the Communications and Performing Arts Department.

89.    Unlike other tenured faculty, Plaintiff was not awarded reassigned time for her scholarly publications.

90.    Despite her impressive record of publications and repeated invitations by editors of peer reviewed journals for submissions, Plaintiff was not named a Distinguished Professor, a position described in the CUNY website as one "reserved for faculty with records of exceptional performance by national and international standards of excellence on their profession".

91.    By virtue of the foregoing Plaintiff has suffered decreased earnings, diminished professional opportunities, humiliation, despondency, loss of self-worth, embarrassment, condescension, been marginalized, had her character maligned and has therefore sustained substantial damages.

92.    Over the years the numerous class cancellations, decreased course loads, and resulting lost income to Plaintiff amounts to approximately $250,000.00, plus interest, the precise number to be proven at trial. Had her election to be Interim-Chair, and Chair Plaintiff would have

16

earned approximately $30,000.00 per annum in addition to her salary, the precise number to be proven at trial.

93.     Defendants discriminated against Plaintiff in the face of a perceived risk that its actions violated federal law and/or its acts were so egregious or outrageous that may serve as evidence supporting an inference of an evil motive.

94.     The actions of Defendants, as alleged herein, amount to willful or wanton negligence, or recklessness, and/or a conscious disregard of the rights of Plaintiff and/or conduct so reckless as to amount to such disregard thereby justifying an award of punitive damages in favor of Plaintiff.

95.     Plaintiff has no adequate remedy at law.

AS A FIRST CAUSE OF ACTION
(Americans with Disabilities Act)

96.     Plaintiff repeats paragraph 1 through 95, inclusive, of this Complaint.

97.     At all times material hereto: Plaintiff was and is a person with a disability; Plaintiff's employers, Defendants CUNY and KCC, had notice of her disability; Plaintiff could perform the essential functions of her job with a reasonable accommodation; and Defendants refused to give her a reasonable accommodation in violation of law.

98.     In addition, Defendants refused to, and did not, engage in an interactive process with Plaintiff in violation of law.

99.     Defendants discriminated against and retaliated against Plaintiff on account of her disability

100.     By reason of the foregoing Plaintiff has sustained compensatory damages in amounts to be proven at trial but believed to be no less than Eight Hundred Thousand ($800,000.00) Dollars for discriminating against her and Eight Hundred Thousand

($800,000.00) Dollars for retaliating against her.

## AS A SECOND CAUSE OF ACTION
### (Rehabilitation Act of 1973)

101.    Plaintiff repeats paragraph 1 through 95, inclusive, of this Complaint.

102.    At all times material hereto, Plaintiff was and is a person with a disability; Plaintiff's employers, Defendants CUNY and KCC, had notice of her disability; Plaintiff could perform the essential functions of her job with a reasonable accommodation; and Defendants refused to give her a reasonable accommodation in violation of law.

103.    Defendants discriminated against and retaliated against Plaintiff on account of her disability.

104.    By reason of the foregoing Plaintiff has sustained compensatory damages in amounts to be proven at trial but believed to be no less than Eight Hundred Thousand ($800,000.00) Dollars for discriminating against her and Eight Hundred Thousand ($800,000.00) Dollars for retaliating against her.

## AS A THIRD CAUSE OF ACTION
### (New York State Human Rights Law – Disability Discrimination)

105.    Plaintiff repeats paragraph 1 through 95, inclusive, of this Complaint.

106.    At all times material hereto, Plaintiff was and is a person with a disability; that Plaintiff's employers, Defendants CUNY and KCC, had notice of her disability; Plaintiff could perform the essential functions of her job with a reasonable accommodation; and Defendants refused to give her a reasonable accommodation in violation of law.

107.    Defendants discriminated against and retaliated against Plaintiff on account of her disability.

108.    By reason of the foregoing Plaintiff has sustained compensatory damages in amounts to be proven at trial but believed to be no less than Eight Hundred Thousand

18

($800,000.00) Dollars for discriminating against her and Eight Hundred Thousand ($800,000.00) Dollars for retaliating against her.

AS A FOURTH CAUSE OF ACTION
(New York City Human Rights Law – Disability Discrimination)

109.    Plaintiff repeats paragraph 1 through 95, inclusive, of this Complaint.

110.    At all times material hereto, Plaintiff was and is a person with a disability; Plaintiff's employers, Defendants CUNY and KCC, had notice of, or should have known of, her disability; Defendants knew that Plaintiff could perform the essential functions of her job with a reasonable accommodation; and Defendants refused to give her a reasonable accommodation in violation of law.

111.    Defendants discriminated against and retaliated against Plaintiff on account of her disability.

112.    By reason of the foregoing Plaintiff has sustained compensatory damages in amounts to be proven at trial but believed to be no less than Eight Hundred Thousand ($800,000.00) Dollars for discriminating against her and Eight Hundred Thousand ($800,000.00) Dollars for retaliating against her.

AS A FIFTH CAUSE OF ACTION
(New York State Human Rights Law – Religious Discrimination)

113.    Plaintiff repeats paragraph 1 through 95, inclusive, of this Complaint.

114.    At all times material hereto, Plaintiff was and is Jewish and an advocate of matters related to Hebraic studies.  Plaintiff's employers, Defendants CUNY and KCC, discriminated against and retaliated against Plaintiff on account of her activities and her being Jewish.

115.    By reason of the foregoing Plaintiff has sustained compensatory damages in amounts to be proven at trial but believed to be no less than Eight Hundred Thousand

19

($800,000.00) Dollars for discriminating against her and Eight Hundred Thousand ($800,000.00) Dollars for retaliating against her.

AS A SIXTH CAUSE OF ACTION
(Declaratory and Injunctive Relief)

116.     Plaintiff repeats paragraph 1 through 95, inclusive, of this Complaint.

117.     Plaintiff is entitled to an Order declaring that Defendants and each of them discriminated and retaliated against Plaintiff in violation of law.

118.     Injunctive relief should be entered against Defendants, and each of them, permanently enjoining them from discriminating and retaliating against Plaintiff, directing that she should be allowed to teach her classes remotely, directing CUNY to restore Plaintiff to her position as General Education Coordinator for the Middle States Review and as Faculty Assessment Liaison and stopping Defendants and each of them from interfering with the teaching of Hebraic studies at KCC.

WHEREFORE, Plaintiff requests the entry of judgment in favor of Plaintiff and against Defendants, jointly and severally as follows:

a.   On the First Cause of Action compensatory damages in amounts to be proven at trial but believed to be no less than Eight Hundred Thousand ($800,000.00) Dollars for discriminating against her and Eight Hundred Thousand ($800,000.00) Dollars for retaliating against her; and

b.   On the Second Cause of Action compensatory damages in amounts to be proven at trial but believed to be no less than Eight Hundred Thousand ($800,000.00) Dollars for discriminating against her and Eight Hundred Thousand ($800,000.00) Dollars for retaliating against her; and

c.   On the Third Cause of Action compensatory damages in amounts to be proven at trial but believed to be no less than Eight Hundred Thousand ($800,000.00)

Dollars for discriminating against her and Eight Hundred Thousand ($800,000.00) Dollars for retaliating against her; and

d.   On the Fourth Cause of Action compensatory damages in amounts to be proven at trial but believed to be no less than Eight Hundred Thousand ($800,000.00) Dollars for discriminating against her and Eight Hundred Thousand ($800,000.00) Dollars for retaliating against her; and

e.   On the Fifth Cause of Action compensatory damages in amounts to be proven at trial but believed to be no less than Eight Hundred Thousand ($800,000.00) Dollars for discriminating against her and Eight Hundred Thousand ($800,000.00) Dollars for retaliating against her; and

f.   On the Sixth Cause of Action declaring that Defendants and each of them discriminated and retaliated against Plaintiff in violation of law and permanently enjoining them from discriminating and retaliating against Plaintiff, directing that she should be allowed to teach her classes remotely and stopping Defendants and each of them from interfering with the teaching of Hebraic studies at KCC; and

g.   All of the foregoing together with Plaintiff's attorney's fees, expert fees, costs and disbursements incurred in connection with this action, pre-judgment and post-judgment interest, back pay, front pay, benefits and such other and

further appropriate relief as this court deems proper pursuant to federal, state and local laws.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: New York, NY
      October 8, 2024

Arnold Pedowitz
Law Office of Arnold Pedowitz
230 Central Park West, 11K
New York, NY 10024
212-403-7321
pedowitz@pedowitzmeister.com
Attorney for Plaintiff